UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| GABE SCHERER, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:16CV236 RLW |
| CHRISTOPHER ROEMER, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 40) The motion is fully briefed and ready for disposition. For the foregoing reasons, the Court will grant summary judgment in favor of Defendants Christopher Roemer ("Roemer"), Gary Stolzer ("Stolzer"), and the County of Ste. Genevieve, Missouri ("Ste. Genevieve County").[1]

## I. Factual Background

This case stems from an injury to Plaintiff's dog during an investigation by the Ste. Genevieve County Sheriff's Office. On August 25, 2015, Deputy Roemer was dispatched to 9705 Misplay Road in Bloomsdale, Missouri, which property was directly across the street from Plaintiff's house. (Defs.' Statement of Uncontroverted Material Facts ["SUMF"] ¶ 1, ECF No. 42) Roemer was investigating an abandoned vehicle on private property. (*Id.*) From the vehicle Roemer could see Plaintiff's front door and decided to attempt contact with the residents to seek information regarding the abandoned vehicle. (*Id.* at ¶ 2) Roemer parked his patrol car in front

---

[1] In the Complaint, Plaintiff also brought claims against the Ste. Genevieve County Sheriff's Office. (ECF No. 1) On January 2, 2018, the Court dismissed those claims on the basis that the St. Genevieve County Sheriff's Office was not a legal entity capable of being sued. (ECF No. 39)

of Plaintiff's residence and walked toward the front door. (*Id.* at ¶ 3) As he approached, he observed "No Trespassing" and "Beware of Dog" signs. (Pl.'s SUMF ¶ 20, ECF No. 45) Upon reaching the front door, Roemer knocked on the door and announced, "Sheriff's Office." (Defs.' SUMF ¶ 5) After hearing no response, Roemer knocked and announced his presence a second time. (*Id.* at ¶ 6) Roemer then heard a dog growl and bark. (*Id.* at ¶ 7) When he turned a round, Roemer observed Plaintiff's large dog, Max, charging at him from the detached garage. (*Id.*) However, Plaintiff claims that Max was a gentle dog with no history of anger toward anyone. (Pl.'s SUMF ¶ 14) Roemer drew his firearm and discharged four rounds at Plaintiff's dog, resulting in injury to the dog. (Defs.' SUMF ¶ 9; Pl.'s SUMF ¶ 21) Plaintiff's dog returned to the detached garage, and Roemer went back to his patrol vehicle to wait for backup. (Defs.' SUMF ¶ 10) Roemer and his Sergeant then waited for Plaintiff to return home. (*Id.* at ¶ 11) Upon Plaintiff's return, deputies advised Plaintiff that his dog had been shot and that they believed he was lying dead in the garage. (Pl.'s SUMF ¶ 23) Plaintiff's dog Max was still alive, and Plaintiff drove him to Veterinary Specialty Services, where his leg was amputated.[2] (*Id.* at ¶¶ 25-26)

On September 19, 2016, Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging civil rights and constitutional violations. (ECF No. 1) Specifically, Plaintiff claims that Defendant Roemer violated Plaintiff's Fourth Amendment rights by unreasonably shooting Plaintiff's dog, which constituted an unlawful seizure (Count I). Plaintiff also claims that Defendants Ste. Genevieve County and Gary Stolzer, the Ste. Genevieve County Sheriff, violated Plaintiff's Fourteenth Amendment Rights by delegating authority to Roemer to make policy or,

---

[2] Although Plaintiff claims in his opposition brief that Defendant Roemer shot and killed Plaintiff's dog, nothing in the record supports this claim. (ECF No. 45 p. 10) Instead, Plaintiff's affidavit indicates that Max's leg was amputated, after which his quality of life declined. (Scherer Aff. ¶¶ 9-10, ECF No. 45-5)

alternatively by failing to properly train, supervise, and control Roemer (Count II). Finally, Plaintiff asserts that Ste. Genevieve County is liable for Roemer's alleged constitutional violations under a theory of *respondeat superior* (Count III).

## II. Legal Standard

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Fed. R. Civ. P. 56(c)(2)). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988); *see also Torgerson*, 643 F.3d at 1042. To meet this burden, the movant must inform the district court of the basis for the motion "and must identify 'those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the movant meets this burden, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the

3

nonmoving party, there is no genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec.*, 475 U.S. at 587). Conclusory allegations are insufficient to establish a material question of fact required to defeat summary judgment. *Boude v. City of Raymore, Missouri*, 855 F.3d 930, 935 (8th Cir. 2017); *Quinn v. St. Louis Cty.*, 653 F.3d 745, 752 (8th Cir. 2011).

### III. Discussion

### A. Fourth Amendment Violation

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a constitutional right committed by a person acting under color of state law." *Andrews v. City of W. Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006) (citations omitted). Plaintiff contends that Roemer's action in shooting Plaintiff's dog violated Plaintiff's right to be free from unreasonable seizures under the Fourth Amendment. "The Fourth Amendment protects 'persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Hansen v. Black*, 872 F.3d 554, 558 (8th Cir. 2017) (quoting U.S. Const. amend. IV). "'A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property.'" *Id.* (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (internal quotations omitted)). "A dog is considered property for Fourth Amendment purposes." *Andrews*, 454 F.3d at 918.

Defendant, however, claims that Roemer is entitled to qualified immunity on Plaintiff's Fourth Amendment violation claim in Count I. "Qualified immunity protects governmental officials from liability for civil damages if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This immunity permits "'officers to make reasonable errors,' *Habiger v. City of Fargo et al.*, 80 F.3d

4

289, 295 (8th Cir. 1996), and provides 'ample room for mistaken judgments.' *Malley v. Briggs*, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011). In addition, "[t]he defense protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

To determine whether government officials are entitled to qualified immunity, courts consider two factors: "(1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful." *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011). The courts have discretion to decide which of the two prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "'If either question is answered in the negative, the public official is entitled to qualified immunity.'" *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoting *Vaughn v. Ruoff*, 253 F.3d 1124, 1128 (8th Cir. 2001)). "Although qualified immunity is an affirmative defense, the burden is on the plaintiff to plead, *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008) (citations omitted).

Here, Plaintiff claims that Defendant Roemer's use of force against Plaintiff's dog was unreasonable. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer." *Andrews*, 454 F.3d at 918 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Courts have held that a police officer performs an unreasonable seizure when he shoots and kills a family pet

5

when that pet presented no danger and non-lethal means of capture would have been effective. *Id.* (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210-11 (3rd Cir. 2001); *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994)). For a defense of qualified immunity from such liability, Roemer must show that "a reasonable officer with the information he possessed at the time of the shooting could have believed that his conduct was lawful in light of the law that was clearly established on the date of the incident." *Id.* at 919.

Here, the Court finds that Defendant Roemer is entitled to qualified immunity. First, Roemer did not violate Plaintiff's established Fourth Amendment rights. While Defendant concedes that shooting Plaintiff's dog constitutes a seizure, to state a Fourth Amendment violation, the seizure must be unreasonable. In determining whether a seizure is reasonable, courts balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the governmental interests alleged to justify the intrusion.'" *Powell v. Johnson*, 855 F. Supp. 2d 871, 875 (D. Minn. 2012) (quoting *United States v. Place,* 462 U.S. 696, 703 (1983)). The government has a strong interest in allowing law enforcement officers to protect themselves from animal attacks, and therefore "courts have recognized that 'no unreasonable seizure may be found where an officer has killed a dog that posed an imminent threat.'" *Id.* (quoting *Dziekan v. Gaynor,* 376 F. Supp. 2d 267, 271 (D. Conn. 2005)).

In *Powell*, police officers were searching the plaintiffs' yard for a person involved in a shooting. *Id.* at 872. As the defendant officer was leaving the yard, plaintiffs' large dog began "jogging" toward the officer with his mouth open, teeth glaring, and looking aggressive. *Id.* at 873. The dog ignored his owner's commands to return. *Id.* The officer then grabbed his gun, and shot and killed the dog. *Id.* The district court found that the officer was entitled to qualified immunity because the officer acted reasonably in shooting the plaintiffs' dog. *Id.* at 876. The

6

plaintiffs argued that a genuine issue of material fact existed as to whether the dog posed a threat to the officer, as plaintiffs contended that "it was a docile dog, had never bitten anyone, and was pregnant and could not move rapidly on the day in question." *Id.* at 875.

However, the *Powell* court noted, that all dogs "'contain a latent threat to human safety ... and can be unpredictable both in their actions and in the signals they send.'" *Id.* at 875-76 (quoting *P.M. ex rel. Whitworth v. Bolinger,* No. 2:10–CV–04208, 2011 WL 5838406, at *7 (W.D. Mo. Nov. 21, 2011)). Although the plaintiffs stated that the dog was "not in attack mode," the court noted that record was devoid of any evidence to support that claim. *Id.* at 876. Instead, the court credited the officer's testimony that the dog charged at him with teeth glaring, which the owner was unable to view from his vantage point, and the officer had nowhere to run for cover. *Id.* Even if the officer misperceived the threat posed by the dog, the court reasoned that "police officers 'are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Id.* (quoting *Davis v. Hall,* 375 F.3d 703, 712 (8th Cir. 2004)). Thus, the *Powell* court concluded that "it was not *unreasonable* for [the officer] to perceive a threat to his safety from a large, unleashed pit bull "jogging" up behind him with its teeth bared." *Id.*

The Court finds the facts of the present case to be similar to those of *Powell.* Defendant Roemer stated that Plaintiff's large dog growled, barked, and charged at him and that Roemer had nowhere to escape from the charging dog. Plaintiff contends that Max was a gentle dog with no history of aggression and that the locations of the bullet holes in the garage door indicate that the dog was far away from Roemer, thus not a threat, when the dog was shot. However, these "facts" are merely speculation. Plaintiff did not witness the event and cannot speak to how the dog behaved on that day. Additionally, the "Beware of Dog" sign indicated that the dog could be vicious. As in *Powell*, while Roemer "perhaps could have reacted differently . . . 'the Fourth

7

Amendment does not allow this type of Monday morning quarterback approach because it only requires that the seizure fall within a *range* of objective reasonableness.'" *Powell*, 855 F. Supp. 2d at 876 (quoting *Hatch v. Grosinger,* Civ. No. 01–1906, 2003 WL 1610778, at *5 (D. Minn. Mar. 3, 2003) (emphasis added) (internal quotation omitted)). Given the size of the dog, the "Beware of Dog" sign, the dog's growling and barking, the dog's charging toward Defendant Roemer, and the lack of ability to escape, the Court concludes that Defendant Roemer "reasonably perceived an imminent threat to his safety and, hence, acted reasonably in shooting [Plaintiff's dog]." *Id.* Accordingly, he is entitled to qualified immunity on Plaintiff's Fourth Amendment claim.[3]

### B. Fourteenth Amendment Violation

Plaintiff also claims that Defendants Ste. Genevieve County and Sheriff Gary Stolzer are liable for either delegating authority to Defendant Roemer to make policy or by failing to properly hire, train, supervise, control, and/or discipline Roemer. Defendants assert they are entitled to summary judgment on both claims contained in Count II.

Local governing bodies may be sued under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "'[M]unicipal liability under § 1983 attaches where ... a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Soltesz v. Rushmore Plaza Civic Ctr.,* 847 F.3d 941, 946 (8th Cir. 2017) (quoting

---

[3] The Court concludes that Defendant Roemer shooting Plaintiff's dog did not violate Plaintiff's constitutional rights, and therefore the Court need not reach the issue of whether the right was clearly established at the time of the shooting. *Lykken v. Brady*, 622 F.3d 925, 931 (8th Cir. 2010).

8

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). While "a single decision by a municipal official can constitute official policy . . . 'liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered.'" *Id.* (quoting *Pembaur*, 475 U.S. at 481 (internal citation omitted)). "'Simply going along with discretionary decisions made by one's subordinates ... is not a delegation to them of the authority to make policy.'" *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986 (8th Cir. 2016) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)).

Here, Plaintiff provides no factual content to create a genuine issue of material fact that Defendants Ste. Genevieve County and Sheriff Stolzer delegated final policymaking authority without constraints to Roemer as required to state a claim for municipal liability under § 1983. Indeed, Plaintiff acknowledges that the Ste. Genevieve County policy allows deputies to use their firearms to "kill . . . dangerous animals when no other disposition is reasonably practical." (ECF No. 41 p. 11, ECF No. 45 p. 21) Defendant Roemer merely followed a policy already in place by discharging his firearm at an animal he reasonably believed was dangerous. Thus, Defendants are entitled to summary judgment on this claim.

Plaintiff also contends that Defendants Ste. Genevieve County and Stolzer failed to adequately hire, train, supervise, control, and/or discipline Roemer. "[A] supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citation omitted). Further, for municipal liability to attach, the court must first find individual liability on the underlying substantive claim. *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). In other words, "[w]ithout a showing that the [officer] violated the Constitution, however, there

can be no liability for failure to train." *Carpenter v. Gage*, 686 F.3d 644, 651 (8th Cir. 2012) (citation omitted); *see also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) ("Because [the plaintiff] failed to establish [defendant officer] violated [plaintiff's] constitutional rights, [plaintiff] cannot maintain this action against [the supervisor].").

As stated above, Defendant Roemer's act of shooting Plaintiff's dog was objectively reasonable and did constitute an unreasonable seizure in violation of the Fourth Amendment. Therefore, Defendants Ste. Genevieve County and Stolzer cannot be held liable on a failure to train or supervise theory. *McCoy*, 411 F.3d at 922. The Court finds that summary judgment in favor of Defendants is warranted.

### C. Respondeat Superior Liability Against Ste. Genevieve County

In Count III, Plaintiff alleges that Ste. Genevieve County is liable for Defendant Roemer's actions under a theory of respondeat superior liability. However, a municipality cannot be held liable solely on the basis of employing a tortfeasor, it can be held liable where "some official policy, 'causes' an employee to violate another's constitutional rights." *Monell*, 436 U.S. at 691-92. As stated above, no genuine issue of material fact exists with respect to Plaintiff's policy claims. Plaintiff appears to concede in his response that § 1983 respondeat superior liability is not available against Defendant Ste. Genevieve County. Thus, the Court will grant Defendant's motion for summary judgment on this count.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 40) is **GRANTED**. A separate Judgment shall accompany this Memorandum and Order.

Dated this 9th day of July, 2018.

                                                            **RONNIE L. WHITE**
                                                            **UNITED STATES DISTRICT JUDGE**